UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

NORTHROP AND JOHNSON HOLDING
COMPANY, INC., a Florida
corporation,

       Plaintiff,

vs.

CARYN LEAHY, a citizen of Rhode Island, and
NORTHROP AND JOHNSON YACHT
CHARTERS, INC., a Rhode Island Corporation,

       Defendants.

_____/

## COMPLAINT

    Plaintiff, Northrop and Johnson Holding Company, Inc., sues Defendants, Caryn Leahy

Northrop and Johnson Yacht Charters, Inc., and alleges:

### Overview

    1.    This is an action at law and in equity for trademark infringement and dilution, trade

dress infringement and dilution, injury to business reputation, unfair competition, and deceptive trade

practices, arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et. seq.* ("Lanham Act"); the

anti-dilution laws of the several states, including Fla. Stat. § 495.151 and R.I. Gen. Laws § 6-2-12;

the fair business practices and unfair and deceptive trade practices acts of the several states,

including Fla. Stat. § 501___ and R.I. § _____; and the common law.

    2.    Defendants, Caryn Leahy and Northrop and Johnson Yacht Charters, Inc., are using

Plaintiff's service marks and trade names "Northrop and Johnson" and/or "Northrop & Johnson" in

violation of Plaintiff's cease and desist letter dated September 2, 2016.  Defendants, Caryn Leahy

and Northrop and Johnson Yacht Charters, Inc.'s use of the "Northrop and Johnson" and/or "Northrop & Johnson" service marks is confusing and deceiving consumers and the public regarding its source, and dilutes and tarnishes the distinctive quality of the service marks and trade dress.

3.    Plaintiff seeks to enjoin the Defendants, Caryn Leahy and Northrop and Johnson Yacht Charters, Inc., from using the "Northrop and Johnson" and/or "Northrop & Johnson" service marks and trade dress to avoid irreparable harm caused by the Defendants' unauthorized use of the marks and trade dress.

## Jurisdiction and Venue

4.    This Court has subject matter jurisdiction over this action pursuant to the following statutes:

    a.    Title 28 U.S.C. §§ 1331 gives the Court original jurisdiction to address the Defendants' acts of infringement of Plaintiff's service mark rights that are protected under section 39 of the Lanham Act, 15 U.S.C. § 1121;

    b.    Title 28 U.S.C. § 1338 gives the Court original jurisdiction to address the Defendants' acts of infringement of Plaintiff's federally registered service marks "Northrop and Johnson" and/or "Northrop & Johnson";

    c.    Title 28 U.S.C. § 1332 gives the Court original jurisdiction of all civil actions where the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states; and,

    d.    Title 28 U.S.C. § 1367, which gives the Court supplemental jurisdiction to resolve claims that are related to the claims within the Court's original jurisdiction.

2

5.      This Court has personal jurisdiction over the Defendants because, on information and belief, Defendants have infringed on Plaintiff's rights to the service marks within Florida causing injury to Plaintiff; and/or infringed on Plaintiff's service mark rights outside Florida which caused injury to Plaintiff in this State.

6.      Furthermore, this Court has personal jurisdiction over the Defendants because they contractually agreed that the federal court in Broward County, Florida shall have exclusive jurisdiction over all controversies relating to the "Northrop and Johnson" and/or "Northrop & Johnson" service marks.  See ¶ 1 of the Non-Disturbance Agreement dated November 24, 1997, which is attached as Composite Exhibit "3".

7.      This Court has jurisdiction over Plaintiff's state and common law claims that relate to the Defendants' acts of infringement pursuant to 28 U.S.C. § 1338 and 1367.

### The Parties

8.      Plaintiff, Northrop and Johnson Holding Company, Inc., is a Florida corporation that maintains its principle place of business in Fort Lauderdale, Florida.

9.      Plaintiff, Northrop and Johnson Holding Company, Inc. (hereinafter "Northrop Holding" or "Plaintiff") owns the "Northrop and Johnson" and "Northrop & Johnson" service marks (the "Mark" or "Marks"), which is duly registered with the U.S. Patent and Trademark Office.

10.     Defendant, Caryn Leahy f/k/a Caryn Johnson Foster (hereinafter "Leahy"), is a citizen of Rhode Island.

11.     Defendant, Northrop and Johnson Yacht Charters, Inc., is a Rhode Island corporation that maintains its principle place of business in Newport, Rhode Island.  Defendant, Northrop and Johnson Yacht Charters, Inc., merged with "N & J Yacht Charters, LLC" on January 1, 2006.  As explained below, N & J Yacht Charters, LLC is the company received a sub-license to use the Marks

3

on November 24, 1997.

12.    Defendant, Leahy, is the sole shareholder, director and officer of Northrop and

Johnson Yacht Charters, Inc., which was formally known as N & J Yacht Charters, LLC (hereinafter

"Leahy Company").

13.    Defendants, Leahy and Leahy Company, operate a yacht charter brokerage and charter

management business, which procures charterers for yachts.

## General Allegations of Fact

14.    Northrop Holding licenses the "Northrop and Johnson" and "Northrop &

Johnson" service marks for yacht brokerage, chartering, management and crewing business

around the world.

15,    Northrop Holding has invested substantial time and resources to build the

recognition and reputation of the Marks around the world with licenses in North America,

Europe, the Far East and Australia..

16.    On November 24, 1997, Northrop Holding licensed the Mark to Bruce Leffers and

Henry Halstead so they could use it in their yacht brokerage, chartering, management and

crewing business.  A copy of the Service Mark License Agreement dated November 24, 1997 is

attached hereto as Exhibit "1".

17.    Northrop Holding's Service Mark License Agreement with Leffers and Halstead

contains the following material terms:

> THIS SERVICE MARK LICENSE AGREEMENT ("Agreement")
> is made as of the 24 day of November, 1997, by and between
> Northrop and Johnson Holding Company, Inc., a Florida
> corporation (hereinafter referred to as "Licensor") ... and Henry
> Halsted ... and Bruce Leffers ... (hereinafter, Halsted and Leffers

4

shall be jointly and severally and collectively referred to as "Licensees").

## Recitals

WHEREAS, Licensor is the owner of the service mark "Northrop and Johnson", which has been registered with the United States Patent and Trademark Office...

WHEREAS, Licensees are desirous of obtaining the right and privilege to use the Service Mark in connection with the sale, charter and brokerage of new and used yachts, boats and other vessels and equipment related thereto (the "Business"); and,

WHEREAS, Licensor is willing to grant to the Licensees the right to use the Service Mark in connection with the Business, **upon the terms and conditions set forth in this Agreement**. (Emphasis added.)

\* \* \*

## TERMS

1. **Recitals.** The Recitals to this Agreement are true and correct and are incorporated herein by this reference.

2. **Grant.** Licensor hereby grants to Licensees as joint tenants the exclusive right and license to use the Service Mark in connection with the operation of the Business throughout the world (the "Territory") but only from the Premise (as defined in Section 3 below). The license to use the Service Mark granted hereunder is exclusive to the Licensees in their individual capacity and except as set forth in Section 13 hereof, nothing contained herein shall be deemed to grant to the Licensees the right to grant Sublicenses to any third party. The Licensees shall not sell, transfer, gift or otherwise dispose of the Service Mark, or any rights arising pursuant to this Agreement, without the prior written consent of the Licensor, which may be granted or denied in the Licensor's sole and absolute discretion.

3. **Conduct of Business.**
\* \* \*
3.2. **Licensees shall also comply with all of Licensor's reasonable requirements in the conduct of the Business.** (Emphasis added).

\* \* \*

3.4. The Licensees may use the Service mark in connection with the name of a wholly owned corporation or as a trade name....

\* \* \*

4. **Cooperation and Coordination with Other Licensees.** The Licensees acknowledges that the Licensor has granted to other licensees the right to use the Service Mark within other geographical territories. The Licensees also understands and agrees that one of the benefits of the Service Mark is that all licensees will be deemed to be offering the same or similar services with the same quality as that associated with the goodwill associated with the Service Mark. In order that the Licensees and all other licensees may receive the benefits accruing from the use of the Service Mark, the Licensees agrees to maintain appropriate databases, on-line integration, records and other information to support its own and the other licensees Business such that there will be a coordinated, integrated and mutually beneficial system for the exchange of information for the mutual benefit of all licensees conducting a Business under the Service Mark.

\* \* \*

13. **Sublicenses.** ...**Notwithstanding the foregoing, the Licensor hereby authorizes the Licensees to sublicense the Service Mark to Caryn Johnson Foster solely in connection with yacht, boat and other vessel charters, which sublicense shall be consistent with and subject to the terms and conditions of this Agreement and such other terms and conditions as are acceptable to Licensor.** (Emphasis added).

\* \* \*

17.8 **Ownership and Management.** A change in the ownership of Licensees shall occur, without the prior written consent of Licensor (which consent may be granted or withheld by Licensor in its sole discretion).

\* \* \*

Upon the occurrence of an Event of Default, Licensor may immediately terminate this Agreement and the license granted hereunder.

\* \* \*

31. **Governing Law.** This Agreement and the interpretation of its terms shall be governed by the laws of the **State of Florida**, without application of conflicts of law principles, and all obligations shall be deemed performable in Broward County, Florida. (Emphasis added).

6

See Exhibit "1".

18.     Leffers and Halstead are yacht brokers who conduct their brokerage activities through their wholly owned company, Polaris Yacht Brokers, Inc. (hereinafter "Polaris"). Polaris officially changed its name with the Rhode Island Secretary of State's Office years ago and it is know called "Northrop and Johnson, Inc." To avoid confusion, Leffers and Halstead's company will be called "Polaris".

19.     With Northrop Holding's permission, Polaris sub-licensed the "Northrop and Johnson" service mark to Defendants, Leahy and Leahy Company, so they could use the Mark in the yacht charter brokerage and charter management business.

20.     The Sub-License Agreement contains the following terms:

### THE SUB-LICENSE AGREEMENT DATED NOVEMBER 24, 1997

THIS SUB-LICENSE AGREEMENT ("Agreement") is made as of the 24 day of November, 1997, by and between Polaris Yacht Brokers, Inc. [n/k/a Northrop & Johnson, Inc.] a Rhode Island corporation (hereinafter referred to as "Sub-Licensor", and Caryn Johnston Foster ("CJF") and N&J Yacht Charters, LLC, a Rhode Island limited liability company ("LLC") (hereinafter CJF and LLC shall be referred to as "Sub-Licensee").

\* \* \*

2. **Grant. Subject to the terms of the License Agreement**, Sub-Licensor hereby grants to Sub-Licensee the exclusive right and license to use the Service Mark in connection with the operation of the Business throughout the world (the "Territory") but only from the Premise (as defined in Section 3 below). The license to use the Service Mark granted hereunder is exclusive to the Sub-Licensee and nothing contained herein shall be deemed to grant to the Sub-Licensee the right to grant sublicenses to any third party....

2.1     On the termination of this Agreement for any reason, the Sub-Licensee will cease and desist from all use of the Service Mark in any way and deliver to the Sub-Licensor all materials and papers upon which the Service Mark appears.

7

2.2     Sub-Licensee will not engage in any activity which in any way impairs, or otherwise challenges any of the Licensor's right, title and interest in or to the Service Mark or any secondary marks (as defined below).  **Furthermore, the Sub-Licensee will at no time adopt or use without the Licensor's express prior written consent, any work or mark which is likely to be confusingly similar to the Service Mark or any secondary mark.**  (Emphasis added.)

3.  **Conduct of Business.**

\* \* \*

3.2     **Sub-Licensee shall also comply with all of Licensor's and Sub-Licensor's reasonable requirements in the conduct of the Business.**  (Emphasis added).

\* \* \*

4.  **Cooperation and Coordination with Other Sub-Licensees.**

The Sub-Licensee acknowledges that other licensees have the right to use the Service Mark within other geographic territories.  The Sub-Licensee also understands and agrees that one of the benefits of the Service Mark is that all licensees will be deemed to be offering the same or similar services with the same quality as that associated with the goodwill associated with the Service Mark.  In order that the Sub-Licensee and all other licensees may receive the benefits accruing from the use of the Service Mark, the Sub-Licensee agrees to maintain appropriate databases, on-line integration, records and other information to support its own and the other licensees Business such that there will be a coordinated, integrated and mutually beneficial system for the exchange of information for the mutual benefit of all licensees conducting a Business under the Service Mark.

\* \* \*

6.  **Promotion of Business and Service Mark.**  During the Term of this Agreement, Sub-Licensee agrees to use its best efforts to promote the Business and the Business of all other licensees.

\* \* \*

15.  **Term.**  The license granted pursuant to this Agreement shall remain in effect for as long as there are no uncured events of default occurring pursuant to the terms of this Agreement and Caryn Johnstron Foster remains actively involved in the day-to-day operation of the Business....

8

\* \* \*

17. **Events of Default.**  The following shall constitute "Events of Default" hereunder.

\* \* \*

17.2.  **Covenants Under this Agreement.  Sub-Licensee fails to fully and promptly perform when due any agreement, covenant, term or condition binding on it contained in this Agreement <u>or the License Agreement</u>, and such failure continues for 30 days after notice thereof by Sub-Licensor to Sub-Licensee.** (Emphasis added).

\* \* \*

Upon the occurrence of an Event of Default, Sub-Licensor may immediately terminate this Agreement and the license granted hereunder.

\* \* \*

24. **Third Party Beneficiary.**  The Licensor [Northrop and Johnson Holding Company, Inc.] shall be a third party beneficiary hereunder.

25. **Waiver.**  No course of dealing on the part of any party hereto or its agents, or any failure or delay by any such party with respect to exercising any right, power or privilege under this Agreement shall operate as a waiver thereof, and any single or partial exercise of any such right, power or privilege shall not preclude any later exercise thereof or any exercise of any other right, power or privilege hereunder.  (Emphasis added).

\* \* \*

30.  **Attorneys' Fees.**  In the event of the institution of any proceeding, whether at law or equity or arbitration or in state or federal court, arising out of any of the terms or conditions of this Agreement, the prevailing party, whether by way of prosecution or defense, shall be entitled to reimbursement for all attorneys' fees and actual costs and other expenses incurred in connection with such proceeding at arbitration, trial and appellate levels....

31. **Governing Law.**  This Agreement and the interpretation of its terms shall be governed by the laws of the **State of Florida**, without application of conflicts of law principles, and all obligations shall be

9

Northrop Holding executed Non-Disturbance Agreements with Defendants, Leahy Company and Leahy, on November 24, 1997 and October 31, 1997 respectively.  Copies of the Non-Disturbance Agreements are attached as Composite Exhibit "3".

27.    The Non-Disturbance Agreement dated November 24, 1997 between Northrop Holding and Defendant, Leahy Company, provides as follows:

> THIS NON-DISTURBANCE AGREEMENT made and entered into this 24th day of November, 1997 by and between Northrop and Johnson Holding Company, Inc. ("Licensor") ... and N&J Yacht Charters, LLC ("Sub-Licensee")....
>
> <u>Recitals</u>
>
> Sub-Licensee is entering this date into a Sub-License Agreement (the "Sub-License Agreement") with Polaris Yacht Brokers, Inc. ("Sub-Licensor") relating to the use by Sub-Licensee of the name "Northrop and Johnson" in connection with the operation of the "Business" as that term is defined in the Sub-License Agreement.
>
> <u>Agreement</u>
>
> In consideration of the performance by Sub-Licensee of the Sub-License Agreement and for other and good and valuable consideration receipt of which is hereby acknowledged, Licensor and Sub-Licensee hereby agree as follows:
>
> 1.    In the event of any termination of the Service Mark License Agreement of even date entered into between Licensor and Sub-Licensor (the "License Agreement"), **for so long as Sub-Licensee performs its obligations under the Sub-License Agreement, Licensor will recognize its rights thereunder to the same effect <u>as if the Sub-License Agreement were made directly by Licensor to Sub-Licensee,</u>** except that, in such event, the parties agree that the Sub-License Agreement will be governed by Florida law (without application of conflicts of law principles) and that the Circuit Courts of Broward County, Florida and/or the Federal District Court for the Southern District of Florida shall be the venue and exclusive and proper forum in which to adjudicate any dispute arising in connection with the Sub-License Agreement. (Emphasis added).

\* \* \*

11

28.     The Non-Disturbance Agreement dated October 31, 1997 between Northrop Holding

and Defendant, Leahy, provides as follows:

> THIS NON-DISTURBANCE AGREEMENT made and entered into
> this 31st day of October, 1997 by and between Northrop and Johnson
> Holding Company, Inc., ("Licensor") ... and Caryn Johnston Foster
> ("Sub-Licensee").
>
> Recitals
>
> Sub-Licensee is entering this date into a Sub-License Agreement (the
> "Sub-License Agreement") with Polaris Yacht Brokers, Inc. ("Sub-
> Licensor") relating to the use by Sub-Licensee of the name "Northrop
> and Johnson" in connection with the operation of the "Business" as
> that term is defined in the Sub-License Agreement.
>
> Agreement
>
> * * *
>
> In consideration of the performance by Sub-Licensee of the Sub-
> License Agreement and for other good and valuable consideration
> receipt of which is hereby acknowledged, Licensor and Sub-Licensee
> hereby agree as follows:
>
> 1.      In the event of any termination of the Service Mark License
>         Agreement of even date entered into between Licensor and
>         Sub-Licensor (the "License Agreement"), **for so long as Sub-
>         Licensee performs its obligations under the Sub-License
>         Agreement,** Licensor will recognize its rights thereunder
>         to same effect **as if the Sub-License Agreement were made
>         directly by Licensor to Sub-Licensee.** (Emphasis added).
>
> * * *
>
> 3.      This Agreement shall be governed by the laws of the State of
>         Florida entered into and performed in such State....
>
> * * *

29.     The Non-Disturbance Agreements provide that if Northrop Holding terminates

Leffers' and Halstead's Service Mark License Agreement dated November 24, 1997, then Northrop

12

Holding directly licenses the Mark to Defendants, Leahy and Leahy Company, under the terms of the Sub-License Agreement dated November 24, 1997. See ¶ 1 of the Non-Disturbance Agreements attached as Composite Exhibit "3".

30.     The Non-Disturbance Agreements require Leahy and Leahy Company to perform their obligations under the Sub-License Agreement. See ¶ 1 of the Non-Disturbance Agreements attached as Composite Exhibit "3".

31.     The Sub-License Agreement requires Defendants, Leahy and Leahy Company, to comply "with all of the Licensor's and Sub-Licensor's reasonable requirements in the conduct of the Business". See ¶ 3.2 of the Sub-License Agreement attached as Exhibit "2".

32.     In addition, the Sub-License Agreement incorporates by reference all of the terms of the Service Mark License Agreement dated November 24, 1997, which includes a requirement of compliance with the Licensor's "reasonable requirements in the conduct of the Business". See Exhibit "2" at ¶ 2 and ¶ 17.2, which incorporate the terms of the Service Mark License Agreement into the Sub-License Agreement; and Exhibit "2" at ¶ 3.2, which requires the Licensee and Sub-Licensee to comply with all of the Licensor's "reasonable requirements in the conduct of the Business".

33.     On July 18, 2011, Northrop Holding issued new Service Mark License Agreements to all licensees, including Leffers and Halstead. Copies of the Service Mark License Agreements dated July 18, 2011 with Leffers and Halstead are attached as Composite Exhibit "4".

34.     Northrop Holding terminated the November 24, 1997 Service Mark License Agreements with Leffers and Halstead before it issued the new licenses.

35.     The Service Mark License Agreements dated July 18, 2011 do not authorize Leffers

13

or Halstead to sub-license their new licenses to any company they do not own and do not authorize a sub-license for either Leahy or Leahy Company.  See Composite Exhibit "4".

36.     The July 2011 Service Mark License Agreements contain an integration clause making it clear that the 2011 Service Mark License Agreements are the only agreements in effect for Service Mark licensees, including Halsted and Leffers, with the exception of Leahy and her company because of the 1997 Non-Disturbance Agreement.

37.     When Northrop Holding terminated the Service Mark License Agreements dated November 24, 1997, the Non-Disturbance Agreements became effective and allowed for Leahy and Leahy Company's continued use of the Marks subject to the requirements of Northrop Holding.

38.     From July 18, 2011 to September 2, 2016, Northrop Holding allowed Defendants, Leahy and Leahy Company, to use the Marks pursuant to the terms of the Non-Disturbance and Sub-License Agreements.

39.     Northrop Holding formed N & J Group, LLC in Florida in 2008 to assume control of the advertising and marketing activities of the Business, including the coordination and control of the licensees and sub-licensees advertisements.

41.     N & J Group, LLC ("Group" or  "N & J Group") is 50% owned by Northrop Holding. Northrop Holding oversees Group and made it responsible for managing the brand, including the marketing and advertising activities of all licensees and sub-licensees.

42.     N & J Group operates and maintains the "Northrop & Johnson"/ "Northrop and Johnson" internet website and a proprietary software system to handle vessel purchase and charter quiries submitted by potential buyers or charterers using the website.

43.     N & J Group is also responsible for bulk purchases of advertising space in various

forms of media for the licensees and sub-licensees use in marketing their clients' vessels for sale or charter.

44.     Defendants, Leahy and Leahy Company, operate their own internet website under the name of "Northrop and Johnson".

45.     Moreover, the Defendants' website uses an unauthorized and altered Mark.

46.     Defendants are required to obtain written permission from Northrop Holding before they can alter or modify the Mark.  See ¶ 9 of Exhibit "2".

47.     Northrop Holding discovered other licensees' clients were getting confused between Holding/Group's website and the Defendants' website, which uses the altered Mark.

48.     In April 2016, Northrop Holding determined that all licensees and sub-licensees within the United States, France and Palma (Spain) must stop using their own websites using the Marks and move all internet advertising and marketing activities to Holding/Group's website by no later than September 1, 2016.

49.     Despite being given four months notice, Defendants, Leahy and Leahy Company, refused to stop using their stand alone website with altered Marks and move her internet advertising and marketing activities to Group's website.

50.     Rather than complying with the reasonable business request of Northrop Holding, Defendants, Leahy and Leahy Company, continued using their own separate website under the altered Mark.

51.     Defendants, Leahy and Leahy Company's, continue to this day operating an internet website using the Mark and altered Mark, which continues to cause confusion with the public and clients of the other licensees selling the same services.

52.     For example, Kevin Merrigan, as a licensee of the Mark, uses it in his yacht brokerage business called Northrop and Johnson Yachts-Ships, Inc.

53.     As required by Northrop Holding, Mr. Merrigan and his company advertise and market his clients' yachts for sale and charter using the Group's website.

54.     Mr. Merrigan had three clients complain that they could not find their yacht listings on the "Northrop and Johnson" website.  Mr. Merrigan discovered his clients had mistakenly gone to the Defendants' unauthorized website, which explains why they could not see their yachts on the official "Northrop and Johnson" website.

55.     Due to the confusion created with the public and licensees' clients, Northrop Holding decided that all licensees and sub-licensees in the United States, France and Spain (Palma) had to use the Group website by no later than September 1, 2016.

56.     On April 27, 2016, Northrop Holding sent an e-mail to Leffers, Halstead and Defendants, Leahy and Leahy Company, advising them that they had to stop using their own independent websites under the "Northrop and Johnson" Mark and that they had to conduct their on-line business activities through the official "Northrop and Johnson" website operated by N & J Group at the direction of the Service Mark Owner, Northrop Holding.

57.     Despite having more than four months notice to plan for and comply with Northrop Holding's reasonable requirement for centralized advertising; world-wide marketing; and uniform branding campaign, Leahy and Leahy Company disregarded the Licensor's reasonable requirements for branding the Business.

58.     Defendants, Leahy and Leahy Company, continue to use an unauthorized website and altered version of the Mark on their own website, which action continues to denigrate the brand and

cause confusion with the public and clients of other licensees.

59.   On September 2, 2016, Northrop Holding, through its counsel, sent a cease and desist demand letter to Defendants, Leahy and Leahy Company, advising them their violation of the reasonable requirements imposed by Northrop Holding in the conduct of the Business and that their actions exceeded the permissible use of the Mark as communicated to them on April 27, 2016. A copy of the Cease and Desist Letter dated September 2, 2016 is attached hereto as Exhibit "5".

60.   Defendants' unauthorized use of a stand alone website and an unauthorized altered Mark constitute defaults under the terms of the Sub-License and Non-Disturbance Agreements.

61.   Northrop Holding terminated the Non-Disturbance and Sub-License Agreements on September 2, 2016. See Exhibit "5".

62.   Despite Northrop Holdings' termination of the Defendants' license rights to use the Mark, the Defendants continue using the Mark in violation of the Sub-License and Non-Disturbance Agreements, Florida law, and Federal law.

63.   Northrop Holding is entitled to injunction relief and damages caused by the Defendants' breach of the Sub-License and Non-Disturbance Agreements

### FIRST CLAIM FOR RELIEF

**Infringement of Federally Registered Service Marks**

**15 U.S.C. §1114(1)(a)**

64.   Plaintiff, Northrop Holding, re-alleges the facts contained in paragraphs 1 through 63 of the Complaint as if fully set forth herein.

65.   Northrop Holding has used it federally registered "Northrop and Johnson" and "Northrop & Johnson" Mark and brand in commerce in connection with virtually all of its services,

including its website, on-line advertising, and yacht brokerage, chartering, management and crewing services.

66.     Defendants, Leahy and Leahy Company, had actual and constructive knowledge of Northrop and Johnson's ownership of and rights in its federally registered Mark prior to Defendants' infringing use of those Marks

67.     Defendants adopted and continue to use in commerce Northrop Holding's federally registered Marks, and marks confusingly similar thereto, with full knowledge of Northrop Holding's superior rights, and with full knowledge that their infringing use of Northrop Holding's Marks was intended to cause confusion, mistake and/or deception.

68.     Defendants offer their services under the infringing Marks in the same channels of trade as those in which Northrop Holding's legitimate services are offerd.

69.     Defendants' infringing use of Northrop Holdings' name and marks in connection with the yacht chartering and charter management business is likely to cause, and has caused, confusion, mistake or deception as to the affiliation, connection or association of the schemes with Northrop Holding, in violation of 15 U.S.C. § 1114.

70.     Defendants' actions constitute knowing, deliberate, and willful infringement of Northrop Holding's federally registered Marks. The knowing and intentional nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

71.     As a result of Defendants' infringement, Northrop Holding has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Northrop Holding in its federally registered Marks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Northrop Holding has no

adequate remedy at law. Northrop Holding will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

WHEREFORE, Plaintiff, Northrop and Johnson Holding Company, Inc., demands the Court enter an Order enjoining Defendants, Caryn Leahy and Northrop and Johnson Yacht Charters, Inc.. from using the "Northrop and Johnson" and "Northrop & Johnson" name and registered Service Marks, and award Plaintiff its reasonable attorneys fees and costs.

## SECOND CLAIM FOR RELIEF

### Federal Unfair Competition and False Designation of Origin

### 15 U.S.C. § 1125(a)

72.     Plaintiff, Northrop Holding, re-alleges the facts contained in paragraphs 1 through 63, 65, 66 and 67 of the Complaint as if fully set forth herein.

73.     Defendants have deliberately and willfully attempted to trade on Northrop Holding's long-standing and hard-earned goodwill in its name brand and Marks the reputation established by Northrop Holding in connection with its services, as well as in order to confuse consumers as to the origin and sponsorship of Defendants' services and to pass off their services in commerce as those of Northrop Holding.

74.     Defendants' unauthorized and tortious conduct has also deprived and will continue to deprive Northrop Holding of the ability to control the consumer perception of its services offered under the "Northrop and Johnson" and "Northrop & Johnson" Marks, placing the valuable reputation and goodwill of Northrop Holding in the hands of the Defendants.

75.     Defendants' conduct is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Defendants and their work schemes with Northrop Holding,

and as to the origin, sponsorship or approval of Defendants and their services, in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1).

76.     Defendants had direct and full knowledge of Northrop Holdings' prior use of and rights in the "Northrop and Johnson" and "Northrop & Johnson" Marks before the acts complained of herein. The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

77.     As a result of Defendants' aforesaid conduct, Northrop Holding has suffered commercial damage, as well as the continuing loss of the goodwill and reputation established by Northrop Holding in its Marks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Northrop Holding has no adequate remedy at law. Northrop Holding will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

WHEREFORE, Plaintiff, Northrop and Johnson Holding Company, Inc., requests the Court enter an Order enjoining Defendants, Caryn Leahy and Northrop and Johnson Yacht Charters, Inc., from using the "Northrop and Johnson" and "Northrop & Johnson" Service Mark and brand in their business, and award Plaintiff its reasonable attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

### Federal Dilution by Tarnishment

### 15 U.S.C. § 1125(c)

78.     Plaintiff, Northrop Holding, re-alleges the facts contained in paragraphs 1 through 63, 65, 66 and 67 of the Complaint as if fully set forth herein.

79.     The "Northrop and Johnson" and/or "Northrop & Johnson" Mark - both in word and

20

logo form - are famous and distinctive and are entitled to protection against dilution by blurring or tarnishment.

80.     Defendants commenced use of the "Northrop and Johnson" and/or "Northrop & Johnson" name and Marks in commerce after the name and Marks had become famous and distinctive.

81.     By using the "Northrop and Johnson" and/or "Northrop & Johnson" name and Marks in connection with yacht brokerage, charter brokerage and yacht management and crewing business schemes in which consumers are deceived as to the nature of the services provided, the origin of those services, and the charges for those services, Defendants have injured and will continue to injure Northrop Holdings' business reputation, have tarnished the distinctive quality of Plaintiff's famous name and Marks, and have lessened the capacity of Plaintiff's famous "Northrop and Johnson" name and Marks to identify and distinguish Plaintiff Northrop Holding's services, in violation of 15 U.S.C. § 1125(c).

82.     As a result of Defendants' tarnishment of Northrop Holding's name and Marks, Northrop Holding has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Northrop Holding in its Marks.  This continuing loss of goodwill cannot be properly calculated and thus continues irreparable harm and an injury for which Northrop Holding has no adequate remedy at law.  Northrop Holding will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct.

WHEREFORE, Plaintiff, Northrop and Johnson Holding Company, Inc., requests the Court enter an Order enjoining Defendants, Caryn Leahy and Northrop and Johnson Yacht Charters, Inc. from using the "Northrop and Johnson" and/or "Northrop & Johnson" logo and Marks and to also

award Plaintiff its reasonable attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF

### Violating of Anti-Cybersquatting Consumer Protection Act (Cyberpiracy)

### 15 U.S.C. § 1125(d)

83.     Plaintiff, Northrop Holding, re-alleges the facts contained in paragraphs 1 through 53, 65, 66 and 67 of the Complaint as if fully set forth herein.

84.     As allege above, Defendants have trafficked in and used numerous domain names that contain or consist of Northrop Holdings' Marks (the "Infringing Domain Names").  For example, Defendants have a domain name "njcharters-com.mail.protection.outlook.com" and web address www.njcharters.com that uses an unauthorized altered Mark.

85.     When the public types in Northrop & Johnson charters on a search engine, it takes them to the Defendants website which is using the unauthorized altered Mark without a license to use the Mark from Northrop Holding.

86.     Defendants have undertaken their activities with respect to the Infringing Domain Names using privacy protection services that prevent Northrop Holding from discovering the identities of the companies that operate the Infringing Domain Names.

87.     Defendants have registered and are using the Infringing Domain Names without Northrop Holding's authorization and with a bad faith intent to profit from Northrop Holdings' Marks, in violation of 15 U.S.C. § 1125(d).

88.     Northrop Holdings' Marks were distinctive and famous at the time the Defendants registered the Infringing Domain Names and remain distinctive today.

89.     The Infringing Domain Names were confusingly similar to Northrop Holdings' Marks

at the time Defendants registered the Infringing Domain Names, and they remain so today.

90.     The Infringing Domain Names do not resolve to websites owned by Northrop Holding. Rather, they resolve to websites controlled by Defendants, which profit from their use.

91.     Defendants did not believe and could not reasonably have believed their use of the Infringing Domain Names constituted fair use or was otherwise lawful especially after they were told to stop using the Mark or any reference thereto on a site other than the official site.

92.     As a result of Defendants' wrongful registration and use of the Infringing Domain Names, Northrop Holding has suffered substantial damages, as well as the continuing loss of the goodwill and reputation established by Northrop Holding in its Marks. This continuing loss of goodwill cannot be properly calculated and thus constitutes irreparable harm and an injury for which Northrop Holding has no adequate remedy at law. Northrop Holding will continue to suffer irreparable harm unless this Court enjoins Defendants' conduct and orders that the Infringing Domain Names be transferred to Northrop Holding.

WHEREFORE, Plaintiff, Northrop and Johnson Holding Company, Inc., requests the Court enter an Order enjoining Defendants, Caryn Leahy and Northrop and Johnson Yacht Charters, Inc., from using the "Northrop and Johnson" and/or "Northrop & Johnson" logo and Marks; order the Defendants to transfer the Infringing Domain Names to Northrop and Johnson Holding Company, Inc.; and enter a judgement awarding Plaintiff its reasonable attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF

### Common Law Trademark Infringment

93.     Plaintiff, Northrop Holding, re-alleges the facts in paragraphs 1 through 62, 65, 66 and 67 of the Complaint as if fully set forth herein.

94.     This is a claim for common law trademark infringement arising under the common law of Florida.

95.     Defendants are using the "Northrop and Johnson" Marks in this State without Plaintiff's permission.  Such unauthorized used by Defendants constitutes trademark infringement under Florida law.

96.     The activities of Defendants complained of herein have the natural and probably tendency to deceive the public and create confusion as to the existence of an affiliation between Defendants and Plaintiff.  As a result, members of the public are likely to be confused and deceived.

97.     Defendants' unlawful acts violate Plaintiff's common law trademark rights and have damaged and continue to damage Plaintiff, causing irreparable harm, for which there is no adequate remedy at law.  Such unlawful acts and damage will continue to occur unless enjoined by this Court.

96.     Plaintiff is entitled to injunctive relief against Defendants, and, after trial, to recovery of any damages proven to have been caused, or profits earned unjustly, by reason of Defendants' acts of infringement.

WHEREFORE, Plaintiff, Northrop and Johnson Holding Company, Inc., demands the Court enter an order enjoining Defendants, Caryn Leahy and Northrop and Johnson Yacht Charters, Inc., from using the "Northrop and Johnson" Mark and brand in their business; award Plaintiff the sum of damages caused by the Defendants' infringement and/or profits unjustly earned by the Defendants' unlawful acts of infringement; and award Plaintiffs' reasonable attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF

## Common Law Unfair Competition

97.     Plaintiff, Northrop Holding, re-alleges the facts contained in paragraphs 1 through 63, 65, 66 and 67 of the Complaint as if fully set forth herein.

98.     This is a claim for common law unfair competition arising under the common law of the State of Florida.

99.     Defendants' use of Plaintiff's Marks and brand constitutes common law unfair competition in violation of the common law of Florida.

100.    Plaintiff has sustained, and will continue to sustain, irreparable injury as a direct and proximate cause of Defendants' unfair competition.

101.    The aforesaid unlawful acts by Defendants will continue unabated unless and until enjoined by this Court.

102.    Plaintiff is entitled to injunctive relief against Defendants, and, after trial, to recovery of any damages proven to have been caused, or any profits earned unjustly, by reason of Defendants' acts of infringement.

WHEREFORE, Plaintiff, Northrop and Johnson Holding Company, Inc., demands the Court enter an order enjoining Defendants, Caryn Leahy and Northrop and Johnson Yacht Charters, Inc., from using the "Northrop and Johnson" and/or "Northrop & Johnson" Mark and brand in their business; award Plaintiff the sum of damages caused by the Defendants' infringement and/or profits unjustly earned by the Defendants' unlawful acts of infringement; and award Plaintiffs' reasonable attorneys' fees and costs.

DATED:   December 22, 2016.

Respectfully submitted,

STROUP & MARTIN, P.A.

25

Attorneys for Plaintiff
119 Southeast 12th Street
Fort Lauderdale, Florida  33316
Telephone:  (954) 462-8808
Facsimile:  (954) 462-0278
E-mail:  fmartin@strouplaw.com
E-mail:  jstroup@strouplaw.com


By: _/s/ Farris J. Martin, III_____
    FARRIS J. MARTIN, III
    Florida Bar No. 0879916
    JAMES W. STROUP
    Florida Bar No. 0842117