UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:16-cv-63008-BB

NORTHROP AND JOHNSON HOLDING
COMPANY, INC., a Florida
corporation,

  Plaintiff,

vs.

CARYN LEAHY, a citizen of Rhode Island, and
NORTHROP AND JOHNSON YACHT
CHARTERS, INC., a Rhode Island Corporation,

  Defendants.
_____/

**PLAINTIFF'S OPPOSITION MEMORANDUM TO DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT (DE 19)**

  Plaintiff, Northrop and Johnson Holding Company, Inc. ("Holding"), hereby provides its opposition memorandum to the Defendants' Motion to Dismiss the Amended Complaint (DE 19) and shows:

**SUMMARY OF PLAINTIFF'S OPPOSITION**

  1. Defendants, Caryn Leahy f/k/a Caryn Johnston Foster and Northrop and Johnson Yacht Charters, Inc. f/k/a N & J Yacht Charters, LLC, made the following contractual stipulations in 1997 to obtain Northrop and Johnson Holding Company's permission to use the Service Mark:

> **Sub-License Agreement dated November 24, 1997**
>
> 31. **Governing Law. This Agreement and the interpretation of its terms shall be governed by the laws of the State of Florida, without application of conflicts of law principles, <u>and all obligations shall be deemed performable in Broward County, Florida</u>.** ….[T]he parties acknowledge and agree that the Circuit Courts of Broward County, Florida and/or the Federal District

1

>> **Court for the Southern District of Florida <u>shall</u> be the venue and <u>exclusive and proper forum</u> in which to adjudicate <u>any</u> case or controversy arising directly or indirectly under or in connection with this Agreement.** (Emphasis added). (See Exhibit "2" (DE 14-2) attached to the Amended Complaint (DE 14)).

> **<u>Non-Disturbance Agreement dated October 31, 1997</u>**

>> 2. **This Agreement shall be governed by the laws of the State of Florida <u>entered into and performed in such State</u>**…. (See Composite Exhibit "3" (DE 14-3) attached to the Amended Complaint (DE 14)).

> **<u>Non-Disturbance Agreement dated November 24, 1997</u>**

>> 1. In the event of any termination of the Service Mark License Agreement of even date entered into between Licensor [Holding] and Sub-Licensor [Leffers and Halsted] (the "License Agreement"), for so long as Sub-Licensee performs its obligations under the Sub-License Agreement, **Licensor will recognize its rights thereunder to the same effect as if the Sub-License Agreement were made directly by Licensor to Sub-Licensee, <u>except that, in such event</u>, the parties agree that the Sub-License Agreement will be governed by Florida law (without application of conflicts of law principles) and that the Circuit Courts of Broward County, Florida and/or the Federal District Court for the Southern District of Florida shall be the venue and exclusive and proper forum in which to adjudicate any dispute arising in connection with the Sub-License Agreement.** (Emphasis added).

>> 2. **This Agreement shall be governed by the laws of the State of Florida <u>entered into and performed in such state</u>**…. (Emphasis added). (See Composite Exhibit "3" (DE 14-3) attached to the Amended Complaint (DE 14)).

2. Florida's long-arm statute, Fla. Stat. § 48.193(1)(a) provides in relevant part:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business

2

>   venture in this state.
>
> * * *
>
> 7. Breaching a contract in this state by failing to perform acts **required by the contract to be performed in this state**. (Emphasis added).

3. Since the Defendants contractually agreed their obligations under the sub-license were deemed performed in Broward County, Florida, they stipulated that they were engaging in business in this State for jurisdictional purposes. Defendants breached their obligations under the Sub-License Agreement by failing to comply with the Licensor's (Holding's) instruction to stop using the Service Mark in their separate internet website. More particularly, in April 2016, Holding gave the Defendants more than 120 days notice to stop using the Service Mark in their separate internet website and to transition their on-line marketing activities to the official "Northrop & Johnson" website controlled by Holding. (See Sworn Statement of Kevin Merrigan at ¶ 41 through ¶ 47 (DE 34)). Defendants breached the Sub-License Agreement in September 2016 when they continued using an unauthorized altered Service Mark in their separate internet website. See *Id.* Therefore, Defendants are subject to Florida's long-arm jurisdiction under Fla. Stat. §§ 48.193(1)(a)(1) and (7).

4. As the sole shareholder, Defendant, Caryn Leahy ("Leahy"), transacts her yacht charter business through her closely held company, Northrop and Johnson Yacht Charters, Inc. ("Leahy's Company"). Leahy's Company is directly infringing on Plaintiff's rights to the Service Mark by continuing to use and using an unauthorized, altered Service Mark on its separate internet website. (See Kevin Merrigan's Sworn Statement at ¶ 36, and ¶ 41 through ¶ 46). Leahy's Company contractually agreed that Broward County was a proper venue and that the Circuit Courts of Broward County, Florida or the Federal District Courts for the Southern District of Florida were the exclusive and proper forum for litigating any disputes concerning the November 24, 1997 Sub-

License and Non-Disturbance Agreements.  (See ¶ 31 of the Sub-License Agreement (DE 14-2); and ¶ 1 of the November 24, 1997 Non-Disturbance Agreement (DE 14-3)).

5. Defendants expressly agreed their sub-license to use the Service Mark would be governed by Florida law and their sub-license obligations would be deemed performed in Broward County, Florida.  (See ¶ 31 of the Sub-License Agreement attached as Exhibit "2" to the Amended Complaint (DE 14)).  Since the Defendants stipulated their sub-license obligations would be deemed performed here in Broward County, they assured the Plaintiff of their availability to be sued here in Broward County for any breach of the Sub-License Agreement.  Defendants purposefully availed themselves of Florida law and the right to transact their sub-license obligations in this jurisdiction.

6. Defendants, Leahy and Leahy's Company, are both subject to specific personal jurisdiction in Florida because they voluntarily agreed to Florida's long-arm jurisdiction through their contracts.  In addition, the Defendants established minimum contacts satisfying due process through the performance of their sub-license obligations here in Florida for the past 20 years.

7. Independently, Leahy's Company is subject to personal jurisdiction in Florida through operation of the forum selection clause in the November 24, 1997 Non-Disturbance Agreement.  Mrs. Leahy, as an intended third party beneficiary, should be bound by the same forum selection clause as she is an intended third party beneficiary of the November 24, 1997 Non-Disturbance Agreement, which secured her rights to the Service Mark under the Sub-License Agreement.

## PLAINTIFF'S OPPOSITION ARGUMENT

8. On September 2, 2016, Defendants, Caryn Leahy and Northrop and Johnson Yacht Charters, Inc. (hereinafter "Leahy's Company"), were informed by Plaintiff's counsel that they were

prohibited from further using the Service Mark in ways not approved by Holding.  Approximately five months earlier, Holding advised Defendants they would not be permitted to use the Mark on their separate internet website and any non-Holding directed advertising after September 1, 2016. (See Kevin Merrigan's Sworn Statement at ¶ 42 through ¶ 46).  Since Defendants disregarded Holding's directive concerning the use of the Service Mark, which Holding retained exclusive control over under the terms of the Sub-License Agreement, Plaintiff told Defendants all use of the Mark must stop immediately.  (See ¶ 5 and ¶ 6 of DE 14-5).  Despite the cease and desist demand, Defendants continued their unauthorized use and infringement of the Service Mark against the clear dictates of Holding who contractually retained the power to make decisions about the exclusive use and treatment of the Service Mark under the Sub-License Agreement. (See Kevin Merrigan's Sworn Statement at ¶ 36, and ¶ 42 through ¶ 46).

9. Leahy and Leahy Company's right to use the Service Mark rests upon the Service Mark Sub-License Agreement dated November 24, 1997 entered into between Polaris Yacht Brokers, Inc., and Leahy and Leahy's Company.  The Sub-License Agreement provides that the Agreement and the interpretation of all its terms shall be governed by the laws of the State of Florida, without application of conflicts of law principles, and **all obligations shall be deemed performable in Broward County, Florida.**  (See Exhibit "2" (DE 14-2) attached to the Amended Complaint (DE 14)).

10. By the terms of the Sub-License Agreement, Plaintiff was given the express status as a "third party beneficiary" to enforce the contractual provisions, including the quality standards of how the Mark is used by the Sub-Licensees.  See DE 14, Exhibit "2", ¶ 24.  That is why Holding reserved in the Sub-License Agreement the power of Holding to exclusively determine the "use" of the Service Mark   (See DE 14-2, ¶ 5; and Kevin Merrigan's Sworn Statement at ¶ 36).

11. The grant of authority by which Leahy and Leahy's Company were given permission to use the Service Mark flowed from the License Agreements dated November 24, 1997 issued by Plaintiff to Henry Halsted and Bruce Leffers. These License Agreements were terminated by mutual consent as shown by the Sworn Statement of Kevin Merrigan (DE 34) and the language of the Service Mark License Agreement dated July 18, 2011 which says:

> 33. **Entire Agreement.** This instrument [2011 license] contains the entire Agreement of the parties and may not be changed orally, but only by an instrument in writing signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. (DE 14-4 at ¶ 33).

12. As a consequence of the 1997 license terminations, the protections that Leahy and Leahy's Company bargained for back in 1997 are applicable to determining that the Southern District of Florida is a proper forum to litigate this matter by application of the mandatory forum selection clause.

13. Holding reserved unto itself the exclusive right of control over the adaptation, treatment and use of the Service Mark under ¶ 5 of the Sub-License Agreement. (See DE 14-2, ¶ 5; and also Kevin Merrigan's Sworn Statement at ¶ 36). In addition, Holding required the Defendants to use their "best efforts to promote the Business and the Business of all other licensees" under ¶ 6 of the Sub-License Agreement. (See DE 14-2, ¶ 5; and also Kevin Merrigan's Sworn Statement at ¶ 37). In April 2016 Holding issued instructions requiring all North American licensees and sub-licensees (Leahy and Leahy's Company) to stop using the Service Mark on their separately owned internet websites by September 1, 2016; and to transition their on-line marketing/advertising to the "Northrop & Johnson" website controlled by Holding. The Defendants breached the terms of the Sub-License by continuing to use an unauthorized altered form of the Service Mark on their separately owned website and by refusing to conduct their on-line marketing/advertising through

the official "Northrop & Johnson" website. On September 2, 2016, Holding, through counsel, sent a cease and desist letter to Defendants demanding they stop any further use of the Service Mark on their separately owned website. The Defendants ignored Holding's demand and continue infringing on Holding's exclusive rights to the Service Mark. (See DE 14-2, ¶ 5 and ¶ 6; and also see Kevin Merrigan's Sworn Statement, DE 34, at ¶ 41 through ¶ 47).

14. There are two Non-Disturbance Agreements that are relevant to the Court's determination of Leahy's personal jurisdiction and Leahy's Company's agreement to litigate in this Court pursuant to the mandatory forum selection clause.

15. In October 1997, in contemplation of getting a sub-license for the Service Mark, Leahy, in an individual capacity, sought assurance from Plaintiff that should the underlying License Agreement from which her ability to use the Service Mark be terminated for any reason, for so long as Leahy performed her obligations, Holding would recognize her rights as if the Sub-License Agreement were made directly by Holding to Leahy. In particular, the October 31, 1997 states:

> 1. In the event of any termination of the Service Mark License Agreement of even date entered into between Licensor and Sub-Licensor (the "License Agreement"), for so long as Sub-Licensee performs its obligations under the Sub-License Agreement, Licensor will recognize its rights thereunder to the same effect as if the Sub-License Agreeement were made directly by Licensor to Sub-Licensees.

16. Leahy signed the Sub-License Agreement in both her individual and corporate capacity. In both capacities she agreed to the application of Florida law and the exclusive jurisdiction of the Circuit Courts of Broward County, Florida and/or the Federal District Court for the Southern District of Florida as the proper forum to adjudicate any case or controversy arising directly or indirectly under or in connection with the Sub-License Agreement. (See DE 14-2, ¶ 31).

17.     The Non-Disturbance Agreement bargained for by Leahy requires application of Florida law and contractually states that all acts are deemed performed by her in the State of Florida under the contract to support jurisdiction.

> "**This Agreement shall be governed by the laws of the State of Florida <u>entered into and performed in such State</u>**."  (See DE 14-3, ¶ 3 of the October 31, 1997 Non-Disturbance Agreement).

18.     In her Affidavit, Leahy overlooks the fact that she chose Florida law to govern her contractual relationship with the Plaintiff from the start.  To protect against a termination of the 1997 License Agreement from which her Sub-License sprang, Leahy and her company protected their right to use the Service Mark by entering into the Non-Disturbance Agreements.  Such a foreseeable termination happened on July 18, 2011 when all outstanding Service Mark Licenses were consensually terminated by Plaintiff and all Licensees.  (See Kevin Merrigan's Sworn Statement at ¶ 28).

### CARYN LEAHY CONTRACTUALLY AGREED TO FLORIDA JURISDICTION

19.     Title 28 U.S.C. § 1391(b)(2) says a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.  By contract Defendant Leahy agreed that all performance was deemed to happen in Broward County, Florida and the contract was entered into here.  In the event the Service Mark License Agreements between Messrs. Leffers and Halsted and Holding dated November 24, 1997 were terminated, the October 31, 1997 Non-Disturbance Agreement would govern her contractual relationship with Holding.  Leahy contractually agreed to the application of Florida law to any dispute concerning the sub-license. Leahy contractually agreed that the Non-Disturbance Agreement was entered into in the State of Florida and that all obligations arising under the Non-Disturbance Agreement, and by implication, the sub-license were contractually to be performed in Florida.

20.     The Sub-License Agreement, by its terms, is governed by Florida law. See DE 14, Exhibit "2", ¶ 31. The sub-license states that all obligations of the parties "shall be deemed performable in Broward County, Florida. See *Id.*

21.     Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)(7) provides that a person, such as Leahy, that enters into a contract in Florida then breaches the contract in this State by failing to perform acts required by the contract to be performed in Florida can be sued in Florida.

22.     Furthermore, Fla. Stat. § 48.193(1)(a)(1) provides that any person who operates or engages in business in this state is subject to personal jurisdiction. By contractually stipulating their sub-license obligations were deemed performed in Broward County, the Defendants admitted they were engaging in business in Florida and thus subject to personal jurisdiction here. Indeed, by making these contractual representations, Leahy and Leahy's Company have demonstrated systematic and continuous contacts with Florida for the last 20 years.

23.     Leahy is alleged to have breached the Non-Disturbance Agreements and Sub-License Agreement here in Florida. The contracts state that all obligations and performance is to be deemed performable in Broward County, Florida. Leahy contractually submitted herself to Florida's long-arm jurisdiction. Due process is satisfied because Leahy contractually agreed to litigate these matters in either the Broward County Circuit Court or the United States District Court for the Southern District of Florida. If a Florida Circuit or District Court is inconvenient or not casually connected to the subject matter of the contracts, then why would Leahy sign contracts in her individual name and as the sole shareholder of her company agreeing to litigate in Broward County, Florida? Apparently it was convenient for her to agree to this venue and forum to obtain the sub-license but now twenty years later, and after she breached the contracts, it is no longer a convenient forum to resolve the dispute.

24. The first Non-Disturbance Agreement executed on October 31, 1997 was between Holding and Caryn Leahy. Paragraph 3 of the Non-Disturbance Agreement makes the terms of the Non-Disturbance Agreement applicable to her successors and assigns. The second Non-Disturbance Agreement was executed on the one hand by Caryn Leahy in her corporate capacity, and on the other hand, by Holding. The Sub-Licensor, Polaris Yacht Brokers, Inc., was not a party to either Non-Disturbance Agreement.

25. Caryn Leahy was a third party beneficiary of the November 24, 1997 Non-Disturbance Agreement since only the first Non-Disturbance Agreement was executed in her individual capacity. Since Leahy ultimately decided that she would use a company to operate the yacht charter brokerage business instead of being a sole proprietorship, Leahy individually accepted the benefits of the Non-Disturbance contract for her company and cannot now avoid the burdens or limitations of having to litigate in the courts of Broward County, Florida.

26. Mrs. Leahy, individually, stands as a third party beneficiary of the November 24, 1997 Non-Disturbance Agreement because Holding's performance under the contract would necessarily and directly benefit Leahy's company and herself. There can be no doubt that the intent of the parties was to benefit Leahy and Leahy's Company with no interruption of the right or benefit to use the Service Mark in the event the underlying 1997 License Agreement was terminated. That license was, in fact, terminated and Leahy cannot now complain about the burden of having to litigate her infringement of the Service Mark in Broward County, Florida because of Florida's long-arm jurisdiction or the forum selection clause. (See Kevin Merrigan Sworn Statement at ¶ 28, ¶ 36 and ¶ 41 through ¶ 47). To hold otherwise would allow Leahy to reap the benefit of using the Service Mark for herself and her company and allow her to escape the burden of litigating the Service Mark's wrongful use in the Southern District of Florida.

## FORUM SELECTION

27. Paragraph 31 of the November 24, 1997 Sub-License Agreement says:

> **Governing Law. This Agreement and the interpretation of its terms shall be governed by the laws of the State of Florida, without application of conflicts of law principles, and all obligations shall be deemed performable in Broward County, Florida**. Subject to the arbitration provision previously set forth herein, **the parties acknowledge and agree that the Circuit Courts of Broward County, Florida and/or the Federal District Court for the Southern District of Florida shall be the exclusive and proper forum in which to adjudicate any case or controversy arising directly or indirectly under or in connection with this Agreement.**

28. The November 24, 1997 Non-Disturbance Agreement has the effect of deleting the arbitration provision in the Sub-License Agreement and replacing it with an exclusive venue and forum selection clause. In particular, the November 24, 1997 Non-Disturbance Agreement states:

> 1. **In the event of any termination of the Service Mark License Agreement of event date entered into between Licensor and Sub-Licensor (the "License Agreement")**, for so long as Sub-Licensee performs its obligations under the Sub-License Agreement, Licensor [Holding] will recognize its rights thereunder to the same effect as if the Sub-License Agreement were made directly by Licensor to Sub-Licensee, **except that, in such event, the parties agree that the Sub-License Agreement will be governed by Florida law (without application of conflicts of law principles) and that the Circuit Courts of Broward County Florida and/or the Federal District Court for the Southern District of Florida shall be the venue and exclusive and proper forum in which to adjudicate any dispute arising in connection with the Sub-License Agreement.** (Emphasis added). (See ¶ 1 of the November 24, 1997 Non-Disturbance Agreement between Holding and Leahy's Company which is in Composite Exhibit "3" to the Amended Complaint (DE 14)).

29. The November 24, 1997 Non-Disturbance Agreement also contains the following stipulation:

> **This Agreement shall be governed by the laws of the State of Florida**

11

> **entered into and performed in such State**…. (Emphasis added). (See DE 14, Composite Exhibit "3", ¶ 2 of the Non-Disturbance Agreement between Holding and Leahy's Company dated November 24, 1997).

30.     The forum selection clause is broad in the sense that it applies to the enforcement of the contracts and any suit connected with a dispute arising in connection with the Sub-License Agreement. Due to the presence of the adjective "any" along with the broad scope of the clause itself, the Court should find the parties intended Leahy and Leahy's Company to litigate any issues concerning the sub-license in Broward County, Florida.

31.     Just as Leahy's Company is bound by the forum selection clause, Leahy herself, as a third party beneficiary is also bound by the forum selection clause.

32.     "[I]t is a venerable principle of contract law that the provisions of a contract should be construed so as to give every provision meaning". *Fla. Polk County v. Prison Health Servs.*, 170 F.3d 1081, 1084 (11th Cir. 1999). In looking at the language of the forum selection clause it is easy to conclude the words dictate an exclusive or mandatory location for litigation. The imperative "shall" when addressing venue makes it clear what the parties intended for sake of further expressing the propriety of Broward County, Florida as the agreed upon forum by using the words "exclusive" and "proper".

33.     The language is clear that a mandatory forum was agreed upon for any party seeking to enforce the Sub-License Agreement after the underlying 1997 License Agreement was terminated. In the case at bar, diversity jurisdiction pursuant to 28 U.S.C. § 1332 was pled along with various federal statutes that covers the dispute in question. The parties to the sub-license and non-disturbance agreements freely negotiated the contractual terms and included the forum selection clause of Broward County, Florida, for contracts which were based on Florida law; entered into in Florida; and deemed performable in Florida. As a result, the parties should have anticipated the

potential for inconvenience at the time the Non-Disturbance Agreement was entered into back in November 1997.

34. Defendants bear a heavy burden of proof to claim a forum selection clause should not be enforced because it is inconvenient. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 591 (1991). Defendants have failed to meet this heavy burden or explain why Florida's long-arm jurisdiction does not control given the extensive contractual stipulations designed to assure Broward County, Florida as the agreed upon forum from the inception of the contractual relationship.

35. "In order for a forum to be deemed inconvenient such that it would render a forum selection clause unenforceable, the party seeking to escape his contract [must] show the trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practicable purposes be deprived of his day in court". *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) at 18.

36. Any assertion that the location of witnesses requires disregarding a forum selection clause is simply not supportable in this case. "With the relative ease of modern travel, such concerns are substantially minimized and therefore do not rise to the level of inconvenience as set forth in *Bremen*. *Id.* at 27.

37. Therefore, the Court should find Florida is not an inconvenient forum especially in light of the contractual agreement to use Florida law and this Court's much clearer understanding of Florida law as opposed to judges sitting in Rhode Island.

38. There is nothing unfair about this dispute being adjudicated by a Florida court. The United States Court of Appeals for the Eleventh Circuit in *Lipcon v. Underwriters at Lloyd's, London*, 148 F. 3d 1285, 1292 (11th Cir. 1998) stated that forum selection clause will not be enforced only if "the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy". The

Eleventh Circuit states that a forum selection clause would be deemed unfair "only when the remedies available in the chosen forum are so inadequate that the enforcement would be fundamentally unfair." *Id.* at 1297. This is not a case where another state's laws are applicable to this claim. The parties all agreed Florida law controls the enforcement of the Sub-License Agreement and Non-Disturbance Agreements. Therefore, there is no difference between remedies or causes of action which will be litigated between the parties whether in Rhode Island or Florida. Likewise, there is nothing fundamentally unfair about enforcing the forum selection clause in Florida.

39. The federal courts traditionally have accorded a plaintiff's choice of forum considerable deference. *In Re Ricoh Corp.*, 870 F. 2d 570 (11th Cir. 1989) *citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S. Ct. 839, 843 (1947). Thus, in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient. When, however, the parties have entered into a contract containing a valid, reasonable choice of forum provision, the burden of persuasion is altered. *Id.*

40. Enforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S. Ct. 2239, 2249 (1988), Kennedy, J., concurring); *see also Stewart*, 810 F.2d 1066, 1075 (11th Cir. 1987)(en banc).

41. In *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S. Ct. 2239, (1988), the Supreme Court stated that when weighing whether to transfer is justified under 28 U.S.C. § 1404(a), a choice of forum clause is a "significant factor that figures centrally in the District Court's calculus." The clear import of the Supreme Court's *Stewart* opinion is that the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors. *In Re Ricoh Corp.*, 870

F. 2d 570 (11th Cir. 1989).

42. There is a strong public policy for Florida courts to interpret contracts to give meaning to the parties' intent by interpreting the plain language used.

43. By enacting the Long-Arm Statue, Fla. Stat. § 48.193(1)(a)(7), the Florida Legislature authorized Florida court's to exercise jurisdiction over non-resident parties that breach contracts in Florida.  This is a strong public policy statement regarding Florida wanting to adjudicate breaches of contracts by non-residents to be performed in Florida in Florida courts.

44. Finally, Plaintiff addresses any concern the Court may have as to enforceability of the forum selection clause contained in both Non-Disturbance Agreements.  Plaintiff has set forth its argument on why Leahy and Leahy's Company are both compelled to abide by the mandatory forum selection clause.

WHEREFORE, Plaintiff, Northrop and Johnson Holding Company, Inc., requests the Court deny Defendants' Motion to Dismiss, and the Defendants' Motion to Transfer Venue.

DATED:   June 5, 2017.

                Respectfully submitted,

                By: */s/ Farris J. Martin, III*
                    FARRIS J. MARTIN, III
                    Florida Bar No. 0879916
                    STROUP & MARTIN, P.A.
                    Attorneys for Plaintiff
                    119 Southeast 12th Street
                    Fort Lauderdale, Florida 33316
                    Telephone: (954) 462-8808
                    Facsimile:  (954) 462-0278
                    E-mail:  fmartin@strouplaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with this Court's CM/ECF docketing system with electronic notice being served this 5th day of June, 2017, to: Claudio Riedi, Esq., and Thomas G. Schultz, Esq., Lehtinen Schultz Riedi Catalano de la Fuente, PLLC, Counsel for Defendants, 111 Brickell Avenue, Suite 2200, Miami, Florida 33131, criedi@lsrcf.com , tschultz@lsrcf.com .

                                                 By: */s/ Farris J. Martin, III*
                                                           FARRIS J. MARTIN, III
                                                           Florida Bar No. 0879916