# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-63008-BLOOM/Valle

NORTHROP AND JOHNSON HOLDING
COMPANY, INC., a Florida Corporation,

    Plaintiff,

v.

CARYN LEAHY, a citizen of Rhode Island, and
NORTHROP AND JOHNSON YACHT
CHARTERS, INC., a Rhode Island Corporation,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon the Motion to Dismiss Second Amended Complaint for Lack of Personal Jurisdiction and for Failure to Arbitrate of Defendants Caryn Leahy ("Leahy") and Northrop and Johnson Yacht Charters, Inc. ("Charters," together with Leahy, "Defendants"). ECF No. [43] ("Motion"). The Court has carefully reviewed the Motion, all opposing and supporting materials, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is **DENIED.**

    **I.    Factual Background**

This case arises out of disagreement about the parties' obligations under several interconnected agreements regarding the licensing of a service mark. Plaintiff Northrop and Johnson Holding Company, Inc. is a Florida corporation with its principle place of business in Fort Lauderdale. ECF No. [41] ¶ 2 ("Plaintiff" or "Holding"). Plaintiff alleges that it owns and licenses the following service marks: "Northrop & Johnson," "Northrop and Johnson" and "The

Authority in Yachting Since 1949" (ECF No. [41] ¶ 3, hereinafter the "Mark"), which are "are used to identify brokers who provide quality services for the sale, charter, management and/or crewing of yachts and vessels" (ECF No. [41] ¶ 4). Defendant Caryn Leahy is a citizen of Rhode Island. ECF No. [41] ¶ 5. Defendant Northrop and Johnson Yacht Charters, Inc. is a Rhode Island Corporation with its principle place of business in Newport, Rhode Island. ECF No. [41] ¶ 6. Defendants "provide charter brokerage and charter management services for yachts." ECF No. [41] ¶ 9.[1]

In 1984, Northrop and Johnson International, Inc. registered the service mark "Northrop and Johnson" with the United States Patent and Trademark Office, Registration Certificate No. 1,293,211. ECF No. [41–1] at 3. The Mark was then subject to various assignment agreements, and ownership was ultimately conferred to Plaintiff on October 29, 1997. ECF No. [41–4] at 2.

On November 24, 1997, three agreements were executed regarding the Mark: a license agreement, a sub-license agreement, and a non-discourse agreement. Plaintiff licensed the Mark to Henry Halsted and Bruce Leffers, both domiciled in Rhode Island (the "1997 License Agreement"). In the 1997 License Agreement, Plaintiff, Halstead, and Leffers "agree[d] that any dispute, controversy, or claim arising out of or related to [the 1997 License Agreement] shall be settled by arbitration" in accordance with the American Arbitration Association and shall be conducted in Fort Lauderdale, Florida." ECF No. [41–6] at 10–11. In addition, "[e]ither party may, during the pendency of said arbitration, seek such interim judicial remedies as may be appropriate under [the AAA] Rules and the then applicable circumstances." *Id* at 11.

---

[1] According to the SAC, Defendant Leahy first operated her business as a sole proprietorship and later organized the business as N & J Charters, LLC. ECF No. [41] at ¶ 8. The business underwent at least corporate reorganization and is now known as Northrop and Johnson Yacht Charters, Inc. *Id.* The Court will treat the prior and successor entities, including Ms. Leahy individually, together as "Defendants."

Section 31, "Governing Law" of the 1997 License Agreement states: "[t]his Agreement and the interpretation of its terms shall be governed by the laws of the State of Florida, without application of conflicts of law principles, and all obligations shall be deemed performable in Broward County, Florida. Subject to the arbitration provision previously set forth herein, the parties acknowledge and agree that the Circuit Courts of Broward County, Florida and/or the Federal District Court for the Southern District of Florida shall be the venue and exclusive and proper forum in which to adjudicate any case or controversy arising directly or indirectly under or in connection with this Agreement." ECF No. [41–6] at 12.

On November 24, 1997, Polaris Yacht Brokers, Inc. ("Polaris"), a Rhode Island corporation formed by Leffers and Halstead (ECF No. [41] ¶ 31) entered into a sub-license agreement with Defendants (ECF No. [41–7], the "1997 Sub-License Agreement"). Under the 1997 Sub-License Agreement, Polaris and Defendants "agreed that any dispute, controversy, or claim arising out of or relating to this Agreement shall be settled by arbitration in accordance with the [Rules of the AAA], and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. Arbitration shall be conducted in Newport, Rhode Island . . . Either party may, during the pendency of said arbitration, seek such interim judicial remedies as may be appropriate under said Rules and the then applicable circumstances." *Id.* at 10–11. The 1997 Sub-License Agreement also contains Section 31, "Governing Law," which provides that the Sub-License Agreement is governed by Florida law, that the obligations set forth under the agreement are "deemed performable" in Florida, and that, subject to the arbitration provisions, the parties agree that Florida shall be the exclusive and proper forum for any matter relating to the Sub-License Agreement. *Id.* at 12.

The third agreement executed on November 24, 1997 was a Non-Disturbance Agreement (the "1997 NDA") between Plaintiff and Defendants.[2] Under the NDA, "[i]n the event of any termination of the Service Mark License Agreement of even date entered into between [Plaintiff] and [Polaris] . . . for so long as [Defendants] perform[ their] obligations under the Sub-License Agreement, [Plaintiff] will recognize [their] rights thereunder to the same effect as if the Sub-License Agreement were made directly by [Plaintiff] to [Defendants] . . ." ECF No. [41–8] at 2; *see also* ECF No. [41] ¶ 33. The 1997 NDA further states that "except that, *in such event*, the parties agree that the Sub-License Agreement will be governed by Florida law (without application of conflicts of law principles) and that the Circuit Courts of Broward County Florida and/or the Federal District Court for the Southern District of Florida shall be the venue and exclusive and proper forum in which to adjudicate any dispute arising in connection with the Sub-License Agreement." ECF No. [41–8] at 2. The 1997 NDA provides that "[t]his Agreement shall be governed by the laws of the State of Florida entered into and performed in such State." *Id.*

According to the SAC, on July 18, 2011, the Plaintiff terminated by the "mutual consent of all licensees and [Plaintiff]" the 1997 License Agreement by entering into new license agreement with Leffers (the "2011 License Agreement"). ECF No. [41] ¶¶ 48, 53; [49] ¶ 28-29; [51] ¶ 6, 9; [52] ¶ 6, 9. The 2011 License Agreement does not mention the 1997 License Agreement or its termination, but does contain additional obligations not contained in the 1997 License Agreement. ECF No. [41–9] at 5. Plaintiff has sought Defendants' compliance with

---

[2] The parties executed two NDAs. The first, signed on October 31, 1997, was between Plaintiff and Leahy individually. The SAC alleges that the NDA was "renegotiated" to when Leahy ceased operating her yacht charter business as a sole proprietorship. ECF No. [41] at ¶ 38. Notably, while the October 31, 1997 NDA contained no choice of law or forum provision, the November 24, 2017 NDA does.

these obligations, and Defendants, who are not a party to the 2011 License Agreement, have refused. *Id.* ¶ 88.

Plaintiff initially filed this action on December 22, 2016 (ECF No. [1]), and filed its Second Amended Complaint on June 27, 2017 (ECF No. [41], "SAC"). The SAC alleges ten causes of action related to the licensing of the Mark sounding in violations of the Lanham Act, breach of contract, trademark infringement, and unfair competition. This motion to dismiss for lack of personal jurisdiction and failure to arbitrate followed.

## II. Legal Standard

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

When reviewing a motion under Rule 12(b)(6), the Court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F.

Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this tenet does not apply to legal conclusions, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("'[U]nwarranted deductions of fact' in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations."). Through this lens, the Court addresses the instant Motion.

### III. Analysis

Defendants move to dismiss the SAC for lack of personal jurisdiction and failure to arbitrate. Defendants principally argue that the Court lacks specific jurisdiction and that Defendants have not consented to jurisdiction in this District. In the alternative, Defendants move to transfer to the District Court of Rhode Island pursuant to 28 U.S.C. § 1404(a). The Court finds that Defendants have consented to jurisdiction in this District and that transfer to the District Court of Rhode Island is inappropriate.

#### A. Motion to Dismiss for Lack of Jurisdiction

Under the 1997 NDA, the parties agreed that upon termination of the 1997 License Agreement, "the Circuit Courts of Broward County Florida and/or the Federal District Court for the Southern District of Florida shall be the venue and exclusive and proper forum in which to adjudicate any dispute arising in connection with the Sub-License Agreement." ECF No. [41–8] at 2. Plaintiff alleges that it terminated by "mutual consent" the 1997 License Agreement in July

2011 and thus the 1997 NDA's forum selection clause applies. *See* ECF No. [41] ¶ 48. Defendants argue that a prior arbitration between Polaris and Defendants found that the 1997 License Agreement was never terminated and that determination is binding on Plaintiff here. ECF No. [43] at 2–3, 15–17. Defendants further argue that even without the arbitrator's determination, Plaintiff never terminated the 1997 License Agreement. *Id.* at 18–19.

Under Florida law, clauses conferring personal jurisdiction are insufficient to establish *in personam* jurisdiction, absent an independent basis for jurisdiction under the long-arm statute. *Alexander Proudfoot Co. World Headquarters v. Thayer*, 877 F.2d 912, 919–20 (11th Cir. 1989) (citing *McRae v. J.D./M.D., Inc.*, 511 So.2d 540 (Fla. 1987) ("[T]his court cannot merely rely on the contract [Defendant] signed that conferred personal jurisdiction and indicated venue, but instead must decide whether Florida can properly assert personal jurisdiction under the long-arm statute."). A defendant can be subject to specific personal jurisdiction under Florida's long-arm statute if it commits one of the enumerated acts that subject a defendant to jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida. *Carmouche v. Tamborlee Mgmt., Inc.,* 789 F.3d 1201, 1204 (11th Cir. 2015) (quoting Fla. Stat. § 48.193(1)(a)). While typically a district court must engage in a two-part inquiry to determine if it may exercise personal jurisdiction over a nonresident defendant by analyzing both the requirements of the long-arm statue and due process (*Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996)), when a defendant has consented to suit in a forum, no due process analysis is required. *Proudfoot*, 877 F.2d at 921 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14 (1985)).

Here, 1997 NDA between the parties provides for consent to jurisdiction in this District for "any dispute arising in connection with the Sub-License Agreement." ECF No. [41–8] at 2.

The forum selection clause in the 1997 NDA is conditional upon the termination of the 1997 License Agreement. ECF No. [41–8] at 2. While the parties urge this Court to delve into the factual record, including findings in a prior related arbitration, this is inappropriate at the motion to dismiss stage. Taking the factual allegations plead in the SAC as true, Plaintiff has plausibly plead that it terminated the 1997 License Agreement. Plaintiff alleges that "In July 2011, all then existing license agreements, including the 1997 Service Mark License Agreement issued to Leffers and Halsted, were terminated by the mutual consent of all the licensees and Holding Company." ECF No. [41] at ¶¶ 48, 53. Moreover, the sworn affidavits of Kevin Merrigan, Bruce Leffers, and Henry Halstead each set forth facts supporting this allegation. ECF No. [49] ¶ 28-29 ("In July 2011, all existing license agreements except Leahy/Leahy Company's sub-license, were terminated. This included the 1997 Service Mark License Agreements issued to Leffers and Halstead . . . . As a consequence of the termination of the 1997 Service Mark License Agreements between Holding and Messrs. Halstead and Leffers, Leahy's Company was authorized to continue using the service mark under the Non-Disturbance Agreement dated November 24, 1997."); [51] ¶ 6 ("On July 18, 2011, Northrop and Johnson Holding Company, Inc. terminated all then existing service mark license agreements by mutual consent of all licensees. In particular, the November 24, 1997 service mark licenses granted to [Mr. Leffers and Mr. Halstead] were terminated on July 18, 2011 by mutual consent of all parties."); [52] ¶ 6 (same). Thus, the Court finds that that Plaintiff has sufficiently alleged that it terminated the 1997 License Agreement.

Since there is a controlling agreement between the parties consenting to jurisdiction in this District, the Court need only assess whether it can assert jurisdiction over Defendants under Florida's long arm statute. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir.

1996). Plaintiff argues that Florida's long arm statute is satisfied because the SAC alleges that Defendants have breached a contract and committed a tort within the state. Fla. Stat. § 48.193(1)(a)(2), (6)–(7). The Court agrees.

"Florida's long-arm statute enables the exercise of personal jurisdiction over nonresident defendants with respect to breach of contract claims if the breach occurs in Florida and involves contractual obligations required to be performed in Florida." *Richards v. Sen*, No. 07–14254–CIV, 2008 WL 4889623, at *7 (S.D. Fla. Nov. 12, 2008). Plaintiff's breach of contract claim relies on contracts where the parties explicitly agreed that the obligations under the contract are performable in Florida. ECF Nos. [41–7], [41–8]. The infringement claims similarly satisfy the long-arm statue because when the "alleged trademark infringement on a website created in another state causes injury in Florida, the long-arm statute is satisfied." *Ares Def. Sys., Inc. v. Karras*, No. 615CV1107ORL22DAB, 2016 WL 1554127, at *3 (M.D. Fla. Apr. 18, 2016) (citing *Licciardello v. Lovelady*, 544 F. 3d 1280 (11th Cir. 2008)); *see also Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250 (11th Cir. 2000). Thus, the Court may exercise jurisdiction over Defendants.

### B. Motion to Transfer

In the alternative, Defendants argue that this matter should be transferred to Rhode Island. In support of their motion, Defendants cite the following facts: Defendants and Polaris are residents of Rhode Island (ECF No. [43-1] ¶ 1–3); Defendants conduct their business in Rhode Island (ECF No. [43-1] ¶ 7); Plaintiff's president resides in Rhode Island (ECF No. [43] at 12); and its Vice-President "spends much of his time" there (*id.*). Plaintiff argues that the forum selection clauses found in the 1997 Sub-License Agreement and 1997 NDA control. ECF No. 48 ¶ 52.

Under Section 1404(a), the court should consider 'the convenience of parties and witnesses' and 'the interest of justice,' with a choice of forum clause 'a *significant* factor that figures *centrally* in the district courts calculus.' *P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)) (emphasis in original). "When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 583 (2013). "[W]hile other factors might conceivably militate against a transfer the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." *Id.* (quoting *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (internal quotation marks omitted)). A forum selection clause applies to not only contract claims but also to claims under state tort law or federal law when the resolution of those claims requires the interpretation or construction of the contract. *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 561 (11th Cir. 2016) (citations omitted).

Here, Plaintiff's claims under both state and federal law relate to interconnected licensing agreements, which have forum selection clauses electing Florida's courts for non-arbitrable claims. ECF Nos. 41–6 at 12; 41–7 at 11; 41–8 at 2. These negotiated clauses should not be upset but for extraordinary circumstances. While Rhode Island may be a more convenient forum for Defendants, they agreed to litigate non-arbitrable claims in Florida, and there is no allegation that these provisions were not the product of arms-length negotiation. Defendants have not articulated any public interest in venue transfer. As such, the forum selection clauses preclude transfer. *Atl. Marine*, 134 S. Ct. at 581; *see also Oceanlake Partners, LLC v. Nanovere Techs.,*

*LLC*, No. 8:14-CV-560-T-24 TGW, 2014 WL 12623416, at *3 (M.D. Fla. May 9, 2014) (denying motion to transfer based on forum selection clause).

### IV. Conclusion

Accordingly, the Motion, **ECF No. [43],** is **DENIED**. Defendants are directed to file an answer no later than **October 2, 2017.**

**DONE AND ORDERED** in Miami, Florida, this 22nd day of September, 2017.

                    **BETH BLOOM**
                    **UNITED STATES DISTRICT JUDGE**

cc: counsel of record